## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| FRANCIS P. CIOCIOLA | : | |
| | : | |
| v. | : | Civil No. CCB-15-1451 |
| | : | |
| BALTIMORE CITY BOARD OF | : | |
| SCHOOL COMMISSIONERS | : | |
| | : | |

### MEMORANDUM

Francis P. Ciociola ("Ciociola"), who worked as a police officer in the Baltimore City Public Schools ("BCPS"), has filed a complaint against the Baltimore City Board of School Commissioners ("BCBSC"), alleging race and age discrimination, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*. Now pending before the court are the defendant's motion to dismiss or, in the alternative, for summary judgment, the plaintiff's motion for leave to file an amended complaint, the plaintiff's motion for an extension of time to respond to the defendant's alternative motion for summary judgment, and the plaintiff's motion for an extension of time to reply to the defendant's response in opposition to that motion. The parties have fully briefed the issues, and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2014). For the reasons that follow, the plaintiff's motion for leave to file an amended complaint will be granted, the defendant's motion to dismiss or, in the alternative, for summary judgment will be denied, and the plaintiff's motions for extensions of time will be denied as moot.

### BACKGROUND

Ciociola, who is white and sixty-one years old, was employed as a police officer with the

1

BCPS.[1] (Am. Compl. ¶ 2.) The BCBSC oversees the operation of BCPS, including the school police. (*Id.* ¶ 3.) On or about March 23, 2012, Ciociola injured his achilles tendon while on the job, and was treated at Mercy Medical Center's Public Safety Infirmary ("PSI"), which is the contracted medical examiner for the BCPS police. (*Id.* ¶¶ 10, 11.) For the next several months, except for a brief stint back at work on light duty, Ciociola was off duty due to his pain and immobility. (*Id.* ¶¶ 12-14.) He continued to see PSI doctors and other providers to whom the PSI referred him. (*Id.* ¶ 12.) On August 22, 2012, the plaintiff underwent surgery to treat his injury. (*Id.* ¶¶ 13, 14.) The plaintiff alleges that, repeatedly in the following months, the PSI would report that Ciociola was "permanently unable to return to work as a Baltimore City School Police Officer," despite the fact that his outside providers anticipated he would be able to return to work. (*Id.* ¶¶ 19, 21, 22, 23.)

On or about November 5, 2012, apparently while Ciociola was recovering from surgery, the Fraternal Order of Police ("FOP"), which represents the school police officers, lodged a complaint against Marshall T. Goodwin ("Goodwin"), the chief of the school police. (*Id.* ¶ 17.) The FOP alleged that Goodwin, who is black, discriminated against white police officers. (*Id.*) Ciociola apparently collected votes for and participated in a vote of no confidence against Goodwin. (*Id.*) Sergeant Clyde E. Boatwright ("Boatwright"), the FOP president, informed members at a FOP meeting that month that he was told by "command" not to help "the white boys," and was questioned about why he was "helping the white boys." (*Id.*) On December 5, 2012, Boatwright sought counsel for the police officers with discrimination complaints against

---

[1] The parties contest whether Ciociola was ever actually terminated. The plaintiff refers to his termination throughout the amended complaint. (*See e.g.*, Am. Compl. ¶¶ 18, 25, 28, 32, 33, ECF No. 11-1.) The defendant counters that, "[t]o date, Mr. Ciociola has never been terminated by BCBSC." (Mot. Dismiss, Mem. Law 6, ECF No. 5-1.)

the defendant, including Ciociola.[2] (*Id.* ¶ 18.)

On or about December 17, 2012, Jerome Jones ("Jones"), a labor relations manager for the defendant, informed Ciociola that the defendant intended to enforce School Board Rule 405.03 ("Rule 405.03"), which would require Ciociola to retire or be recommended for dismissal given his prolonged absence from work. (*Id.* ¶ 20.) Apparently, Boatwright requested an extension of time to respond to the notice given Ciociola's recovery.[3] (*Id.*) On February 2, 2013, Ciociola was cleared to return to work on light duty. (*Id.* ¶ 22.) On March 11, 2013, the PSI returned Ciociola to full duty but indicated that he first must pass certain skills assessment tests. (*Id.* ¶ 23.) Jones, however, told Ciociola that his position had been filled during his absence and no opening was available. (*Id.* ¶ 24.) The defendant scheduled training sessions for Ciociola in June 2013, which Ciociola could not attend because of illness and/or hospitalization. (*Id.* ¶¶ 26, 27.) The plaintiff alleges he was told the trainings would be rescheduled, but they never were. (*Id.* ¶¶ 27, 28.) Ciociola also claims that the defendant did not return his communications when he informed them he would undergo another surgery in February 2014. (*Id.* ¶ 27.) According to Ciociola, several younger, black police officers who were injured on the job and placed on light or off duty for periods of time similar in duration to the plaintiff's absence were returned to duty without having to complete any trainings or skills assessments, and were not threatened with dismissal under Rule 405.03. (*Id.* ¶ 29.) Although not explicitly labeled as such, Ciociola's complaint also alleges that the defendant retaliated against him in violation of Title VII for asserting claims of discrimination by, and supporting the vote of no confidence against,

---

[2] According to the amended complaint, Boatwright alleged that the PSI's determination that Ciociola was unlikely to return to full duty was pretext for the discriminatory decision to terminate Ciociola. (*Id.* ¶ 18.) It is not clear to the court, however, that Ciociola had been terminated when Boatwright sought legal counsel for him.
[3] The defendant claims that Ciociola never responded to Jones's letter. (Mem. Law 5.)

Goodwin.[4] (*Id.* ¶ 17.)

On or about April 3, 2013, Ciociola filed charges of discrimination with the Equal Employment Opportunity Commission, and he received his right to sue letter on February 23, 2015. (*Id.* ¶¶ 6, 7.) He timely filed this complaint on May 20, 2015. The defendant filed a motion to dismiss or, in the alternative, for summary judgment on September 10, 2015. (Mot. Dismiss, ECF No. 5.) This court granted the plaintiff an extension to October 9, 2015, to respond to that motion. (Paperless Order, Docket Entry No. 8.) On October 19, 2015, the plaintiff filed a motion for leave to file an amended complaint, and attached a proposed amended complaint. (Mot. Am. Compl., ECF No. 11.) The defendant opposed that motion, and the plaintiff filed a reply. On December 2, 2015, almost two months after the deadline, the plaintiff responded to the defendant's alternative motion for summary judgment, and requested from the court an extension of time to that date to respond. (Mot. Extension Resp., ECF No. 14.) The defendant opposed that motion, and the plaintiff has pending a motion for an extension of time to file a reply. (Mot. Extension Reply, ECF No. 16.)

## STANDARD OF REVIEW

I.    <u>Leave to Amend Complaint</u>

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a). A district court may deny leave

---

[4] Ciociola's original and amended complaints both allege violations of Title VII and ADEA generally, but neither cites to specific provisions of the statutes. (*See* Compl. ¶¶ 1, 18-26; Am. Compl. ¶¶ 1, 30-40.) The amended complaint alleges facts that clearly sound in retaliation, even though Ciociola never explicitly states he is bringing such a claim. Ciociola has sufficiently pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) ("The complaint must thus contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.") (internal quotations omitted); 5 Wright & Miller, Federal Practice and Procedure § 1216 (3d ed.) ("[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery on any recognizable legal theory, even though that theory may not be the one suggested or intended by the pleader, or the pleading must contain allegations from which an inference fairly may be drawn by the district court that evidence on these material points will be available and introduced at trial.").

to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if it "fails to satisfy the requirements of the federal rules." *Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotations omitted)). Thus, for example, an amendment would be futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Wilson*, 525 F.3d at 376.

II.    <u>Motion to Dismiss</u>

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To

satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion, the court does not always have to limit its review to the pleadings. It also can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotations omitted).

## ANALYSIS

I.     Leave to Amend Complaint

The court will accept Ciociola's amended complaint. There is no indication that it has been filed in bad faith; the plaintiff alleges that "newly acquired [information] from witnesses and[/]or documents previously unavailable" to the plaintiff have allowed him to clarify and supplement his complaint. (Mot. Amend Compl. ¶ 6.) And the proceedings are at an early enough stage—discovery has not yet occurred—that permitting Ciociola to amend his complaint will not prejudice the defendant.

Further, the amended complaint is not futile. In the original complaint, Ciociola adequately pled that the defendant's inconsistent enforcement of Rule 405.03 was motivated by race and age.[5] (Compl. ¶ 16.) In the amended complaint, he also has alleged that the defendant

---

[5] In its motion to dismiss or for summary judgment, BCBSC states that "[i]t is nowhere alleged in Mr. Ciociola's Complaint that either his race or his age was a motivating factor in a tangible employment action by BCBSC." (Mem. Law 2.) In fact, Ciociola originally pled that "African American school police officers [under forty years old] . . . all sustained on the job injury and were placed off work and[/]or on light duty for extended periods of time

did not require younger, black officers to submit to trainings or skills assessments before returning to their positions, as BCBSC did with Ciociola. (Am. Compl. ¶ 29.) Further, the information about Ciociola's FOP activities in the original complaint was insufficient to allege retaliation. (Compl. ¶ 17.) In the amended complaint, however, although he never uses the word "retaliation," Ciociola alleges in more detail that he: (a) supported the white police officers who alleged Goodwin discriminated against them on the basis of race; (b) participated in and collected votes for a vote of no confidence against Goodwin because of the alleged hostile work environment; and (c) was provided legal counsel by FOP to pursue his discrimination complaint against Goodwin. (Am. Compl. ¶¶ 17, 18.) Ciociola further claims that, by the time the defendant indicated it could not reinstate the plaintiff, FOP already had registered a grievance about the plaintiff's termination, suggesting a causal link.[6] (*Id.* ¶ 25.) The amended complaint also revises the timeline of events to provide further support for a potential causal connection. Specifically, in the original complaint, Ciociola said—apparently incorrectly—that the relevant FOP events occurred in November 2011, more than a year before Jones sent Ciociola the letter indicating the defendant's intent to enforce Rule 405.03, and even before Ciociola was injured. (Compl. ¶ 17.) In the amended complaint, Ciociola clarifies that the FOP activities occurred in November and December 2012, immediately before Jones's letter, making an allegation of retaliation more plausible. (Am. Compl. ¶¶ 17, 18, 20.)

In conclusion, there is no indication that Ciociola acted in bad faith in requesting leave to amend his complaint, and the amendment would not be prejudicial to the defendant or futile. Further, as will be discussed in the next section, Ciociola's amended complaint meets his

---

similar to Plaintiff. Defendant, however[,] returned the [younger,] African American officers to work and never invoked" Rule 405.03. (Compl. ¶ 16.) This court finds this paragraph sufficient to allege that race or age motivated the defendant's alleged inconsistent enforcement of Rule 405.03.

[6] *But see supra* note 2.

pleading requirements. Accordingly, this court will accept his amended complaint.

II.     Motion to Dismiss

This court will treat BCBSC's motion as a motion to dismiss.[7] The exhibits to the defendant's motion are integral to its pleading, *see Oberg*, 745 F.3d at 136, and therefore they may be considered in resolving the motion. The court also will treat the motion as sufficiently responsive to the amended complaint, even though the motion was filed first. Although BCBSC has not had an opportunity to respond to the augmented retaliation claim in the plaintiff's amended complaint, given that Ciociola's discrimination claims are sufficient to overcome a motion to dismiss, this court will deny BCBSC's motion in its entirety and allow discovery to proceed in the interests of judicial efficiency. As this case is only at the motion to dismiss stage, the defendant will have an opportunity to answer and otherwise defend its actions.

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). It also prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by" Title VII. *Id.* § 2000e–3(a). The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(2). Where, as in this case, there is no direct evidence of discrimination, such claims are analyzed under the three-pronged burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first make out a prima

---

[7] As a result, the plaintiff's motion for an extension of time to respond to the defendant's alternative motion for summary judgment will be denied as moot.

facie case of discrimination under Title VII or the ADEA, or retaliation. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007).[8] The prima facie case, however, is not a pleading requirement. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Instead, the plaintiff's complaint must state a plausible claim for relief under Title VII or the ADEA—i.e., in this case, that BCBSC fired Ciociola because of his race and/or age, and retaliated against him because of his race. *McCleary-Evans*, 780 F.3d at 585. If the plaintiff succeeds in carrying out the initial burden, then "the burden shifts to the employer . . . 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). Once such a reason is provided, the burden shifts back to the plaintiff to demonstrate that the given reason was a pretext for unlawful discrimination. *Id.*

Unlike in *McCleary-Evans*, Ciociola has alleged facts supporting a reasonable inference that he was discriminated against because of his race and age. *McCleary-Evans*, 780 F.3d 585-86. Ciociola has cited specific black and younger police officers—who apparently were similarly situated to him in that they were out on injury leave for comparable periods of time—whom he alleges BCBSC treated more leniently than him, a white man in his sixties. *See* 29 U.S.C. § 631(a) (To state a claim of age discrimination in employment, a person must be "at least 40 years of age."); *Lucas v. Dole*, 835 F.2d 532, 533-34 (4th Cir. 1987) (citing to *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273 (1975), in noting that Title VII protects whites in "reverse

---

[8] The elements of a prima facie case of race or age discrimination are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (Title VII); *Hill*, 354 F.3d at 285 (Title VII and ADEA). The elements of a prima facie case of retaliation under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc).

discrimination" cases). In particular, Ciociola has alleged that BCBSC inconsistently enforced Rule 405.03 and police officers' training and assessment requirements among these officers and him. The defendant—perhaps correctly—argues that it was obligated to enforce Rule 405.03 against Ciociola and require him to complete skills assessments based on Maryland police officer certification regulations and his doctor's discharge sheets, (Mem. Law 15-16), but BCBSC does not address the plaintiff's allegations that these requirements were not equally enforced against similarly situated black or younger police officers. At the motion to dismiss stage, the court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra*, 120 F.3d at 474. Although close, the plaintiff has sufficiently pled that the differential treatment to which he was subjected was *because* of his race. *See McCleary-Evans*, 780 F.3d at 585-586. Ciociola has stated a plausible claim of discrimination on the basis of race and age for purposes of this motion.

In terms of retaliation, the Fourth Circuit has articulated an "expansive" view of what constitutes oppositional conduct, recognizing that it "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). Oppositional activity must be directed to "an unlawful employment practice" under Title VII, 42 U.S.C. § 2000e-3(a), but the Fourth Circuit also has made clear that this phrase should be interpreted broadly. *See Boyer-Liberto*, 786 F.3d at 282. Thus, "an employee is protected when she opposes 'not only . . . employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful,'" and the Title VII violation to which the oppositional communication is directed "may be complete, or it may be in

progress." *Id.* (alterations in original) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406-07 (4th Cir. 2005)). Ciociola's support for claims that Goodwin discriminated against white police officers, including the plaintiff's collection of votes of no confidence against the police chief, constitutes opposition activity. Ciociola's allegations support a reasonable inference, *see McCleary-Evans*, 780 F.3d at 586, of a "causal link" between his oppositional activities and his alleged termination. There is no indication that the defendant was unaware Ciociola engaged in protected activity. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Further, Ciociola alleges that the FOP activities occurred in November and December 2012, immediately before the Jones letter, (Am. Compl. ¶ 17, 18, 20), making an allegation of retaliation plausible.[9] *See Constantine*, 411 F.3d at 501 (Ordinarily, there must be "some degree of temporal proximity to suggest a causal connection.").

Accordingly, Ciociola has alleged facts sufficient to state a plausible claim of discrimination on the basis of age and race, and retaliation on the basis of race. BCBSC's motion to dismiss will be denied.

## CONCLUSION

For the reasons stated above, the plaintiff's amended complaint will be accepted, the defendant's motion to dismiss or in the alternative for summary judgment will be denied, the plaintiff's motion for an extension of time to respond to the defendant's alternative motion for summary judgment will be denied as moot, and the plaintiff's motion for an extension of time to reply to the defendant's response in opposition to that motion will be denied as moot. Counsel

---

[9] The defendant responded to the original complaint's allegations by arguing that the FOP activity occurred over a year before Jones's letter, thus making any causal link elusive, and that the statements by the FOP president did not reflect the defendant's position. (Mem. Law 13-14.) In his amended complaint, Ciociola revised the timeline and fleshed out the FOP allegations to include alleged conduct by Goodwin and, therefore, the defendant. (Am. Compl. ¶¶ 17, 18.) As stated above, BCBSC will have an opportunity to contest fully Ciociola's claim of retaliation, and articulate a legitimate, nondiscriminatory reason for its employment actions.

will be contacted to set a discovery schedule. A separate order follows.


January 12, 2016                          /s/
Date                              Catherine C. Blake
                                  United States District Judge