IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **FRANCIS P. CIOCIOLA** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No.: 15-cv-01451-CCB |
| **BALTIMORE CITY BOARD OF SCHOOLS** | * |
| **COMMISSIONERS** | * |
| | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SECOND AMENDED COMPLAINT & JURY DEMAND

Plaintiff Francis P. Ciociola, by and through his attorneys, George A. Rose, Esquire, John J. Leppler, Esquire, and the law firm, Rose Law Firm, LLC, hereby submits Plaintiff's Second Amended Complaint & Jury Demand, and in support thereof states:

### I.   PRELIMINARY STATEMENT

1.   This action for declaratory, injunctive, monetary and other appropriate relief is brought by plaintiff to redress intentional violations by defendant of rights secured to the plaintiff by statutory laws of the United States of America.  This action arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sections 2000e et seq., ("Title VII"), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq.

### II.   PARTIES

2.   Plaintiff Francis P. Ciociola (hereinafter "Plaintiff") is a natural person, a Caucasian male, sixty-one (61) years of age, who resides in Lincoln, Delaware.  At all times relevant hereto Plaintiff was an employee of defendant, working as a police officer II in the Baltimore City School System.

3. Defendant Baltimore City Board of School Commissioners, (hereinafter "Defendant") was at all times relevant hereto, responsible for the management maintenance, operation, and control of the Baltimore City Public School System, including the Baltimore City School Police Force (BCSPF).

### III.    JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 1132(e), all of which provide for original jurisdiction of Mr. Ciociola's claims arising under the laws of the United States and over actions to secure equitable and other relief.

### IV.    VENUE

5. Venue is proper in this district under 28 U.S.C. *§1391(a) (2),* and *§1391(b) (2)* because the events or omissions giving rise to this claim occurred in this district.  Also, venue is proper in this district under 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practices were committed in this district, and the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district.

### V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On or about April 3, 2013, Plaintiff timely filed charges of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC).

7. On or about February 23, 2015, Plaintiff received a Notice of Right to Sue letter from the EEOC.  Plaintiff filed this complaint within ninety (90) days after receiving the Notice of Right to Sue letter. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

## VI.     FACTUAL ALLEGATIONS

8. On or about August 23, 2004 Defendant employed Plaintiff as a School Police Officer II. ("SPO"). As SPO Plaintiff was a member of the Fraternal Order of Police Baltimore School Police Lodge No.5 INC, ("FOP"), the collective bargaining unit representing Plaintiff with his employment by BCBSC. At all times relevant, the president of the FOP was Sergeant Clyde E. Boatwright (Sgt. Boatwright).

9. The command structure of the BCSPF was similar to the regular Baltimore city police force with a chief of police, rank and file officers and administrative police personnel. At all time relevant to this lawsuit, African American Marshall T. Goodwin (Chief Goodwin) was the chief of the School Police and Plaintiff's ultimate supervisor. Caucasian Lt. Schuch was the SPO in Plaintiff's immediate change of command for administrative and personnel issues and African American Jerome Jones, was the labor relations manager. At all times relevant hereto, Plaintiff performed his job duties and responsibilities no less than satisfactorily and consistent with the legitimate expectation of Defendant.

10. On or about March 23, 2012, Plaintiff suffered an injury during the course of performing his job duties. Plaintiff was immediately seen and treated at Mercy Medical center emergency room for the injury. Upon discharge Plaintiff was instructed to follow up with Mercy Medical Center's Business health services, at Mercy Medical Hospital, who also operates Mercy Medical Center's Public Service Infirmary (PSI). Mercy Medical Center's Public Safety Infirmary ("PSI") is the contracted medical examiner for the City of Baltimore, including BCBSC School Police.

11. On March 26, 2012, Plaintiff was seen by Dr. Maria E. R.; McManus, M.D. at St. Paul & Biddle Medical Associates/Pacific Rehab where Plaintiff was diagnosed with Right

ankle/right foot injury and Achilles tendon rupture/fracture. Plaintiff was also seen by PSI on March 26, 2012 where Plaintiff was assessed as having "injury of a lower extremity (959.9) Right ankle/Achilles tendon injury". PSI placed Plaintiff off duty and outlined a plan of action for Plaintiff treatment and follow up. At all times relevant hereto, PSI and Defendant, including Defendant's agents, servants and/or employees Chief Goodwin and or Jerome Jones, had maintained regular communications on Plaintiff's injuries and treatment.

12.     For the next few months, Plaintiff continued to receive medical treatment and/or evaluation by the PSI and other medical services providers who were referred by PSI. During this period, PSI kept Plaintiff off duty, while he received treatment, therapy, testing and evaluation.

13.     On or about June 19, 2012, PSI returned Plaintiff to work, with limitations or modified duties. By this time Plaintiff was schedule to have surgery on August 22, 2012 to treat his work injury. The delay in scheduling surgery for Plaintiff's injury was due to PSI's plan for and treatment of Plaintiff's Injury.

14.     After PSI returned Plaintiff to work on June 19 2012, on modified duty status, on or about July 27, 2012 Plaintiff opted to, and remained off duty in light duty status, using Plaintiff's sick leave, personal leave or other leaves. Plaintiff elected to remain off duty due to pain, discomfort and immobility wearing a boot on duty and driving to and from work with the boot on. Furthermore, Dr. Stuart D. Miller, M.D., of Union Memorial Orthopedics and Sports Medicine, who was then evaluating, treating and or consulting with Plaintiff in preparation for the surgery to treat Plaintiff's work injury, advised that Plaintiff could not report for work due to ongoing treatment and effects of Plaintiff's work injury. Additionally, on July 26, 2012, Plaintiff was seen by PSI, who again placed him off duty, noting: "He is in a lot of discomfort and he has

been advised to be in the CAM boot. As this is his Right foot and he has been advised not to drive we will place him off." PSI also incorporated in its treatment plan Plaintiff's August 22, 2012 surgery and August 30, 2012 post op appointment with Dr. Miller.

15. Over the next three months Plaintiff was seen by PSI at least twice. Each time PSI kept Plaintiff off duty and adopted the treatment plan of Plaintiff's doctors. During this period of time Plaintiff had successful surgery and was recovering under treatment by Dr. Miller.

16. On November 9, 2012, Plaintiff was seen by PSI who kept Plaintiff off duty and noted that: "He is improving. He has soreness at the Achilles which is getting better. He is hopeful of returning to full duty soon." On November 30, 2011, Plaintiff was again seen by PSI who kept Plaintiff off duty and noted Plaintiff's follow up visit with Dr. Miller on December 12, 2012. However, in its treatment plan, PSI stated: "on his d/c paper we will write "It is highly unlikely Mr. Ciociola will return to full duty as a Baltimore City School Police Officer." PSI also reported that Plaintiff claim that he feels that he could not return to full duty or light duty.

17. On or about November 5, 2012, the FOP president Sgt. Boatwright lodged a general complaint to Chief Goodwin's superior about claims of hostile work environment against Chief Goodwin, involving complaints and allegations of "racial discrimination" by SPOs. The allegations of racial discrimination were made by white police officers who were supported by Plaintiff. As a result of these allegations, Plaintiff and the other officers push for a vote of no confidence against Chief Goodwin. Plaintiff participated in the vote of no confidence, including helping to collect votes from SPOs. On or about November 17, 2012, during the floor discussion session of a FOP State Loge Meeting in Fredrick Maryland, FOP President Stg. Boatwright stated that he was told by "command" not to help "the white boys" and/or was questioned why he was "helping the white boys".

18.     On December 5, 2012, the FOP president Sgt. Boatwright sought legal counsel for the SPOs who had discrimination complaints and added Plaintiff as a part of the group with the allegation that PSI action to state: "on his d/c paper we will write "It is highly unlikely Mr. Ciociola will return to full duty as a Baltimore City School Police Officer", was been used as a discriminatory tool against Plaintiff to terminate his employment.

19.     On December 14, 2012, Plaintiff was seen by Dr. Miller, whose assessment included the statement that: "we have not cleared him for return to full duty at this time. He will follow up with us in approximately four to six weeks."  On the same day Plaintiff was seen by PSI, after his evaluation by Dr. Miller.   PSI adopted the treatment plan of Dr. Miller and kept Plaintiff off duty.  However, in its evaluation report, PSI stated: "On his d/c paper we will write "Mr. CIOCIOLA is permanently unable to return to work as a Baltimore City School Police Officer."  However, on December 17, 2012, Dr. Miller issued a work leave slip for Plaintiff indicating that "Pt is in physical therapy progressing to return to work in the near future."

20.     On or about December 17, 2012, Defendant's Labor Relations Manager Jerome Jones, informed Mr. Ciociola by letter that BCPSPF will "enforce School Board rule 405.03" as to Plaintiff, requiring Plaintiff to retire or be recommended for dismissal.  The notice gave Plaintiff until December 28, 2012 to respond to the notice of disability termination.  On December 22, 2012, FOP President Sgt. Boatwright emailed Mr. Jones and requested an extension of time for Plaintiff to respond to the Rule 405.03 Letter due to Plaintiff's illness and/or hospitalization.  The meeting was schedule by Mr. Jones for December 27, 2012.  On January 23, 2013, Mr. Boatwright sent an email to Mr. Jones requesting "the opportunity to revisit the determination of his [Plaintiff] status."

21. On January 1, 2013, Plaintiff was seen by Dr. Miller who indicated that Plaintiff: "May return to work light duty on 2/4/13". On January 1, 2013 Plaintiff was also seen by PSI who adopted Dr. Miller's treatment plan indicating that "patient will remain off and on modified duty on 2/4/13". However, in its report PSI stated: "On his d/c paper we will write "Mr. CIOCIOLA is permanently unable to return to work as a Baltimore City school police officer.".

22. On or about February 2, 2013 after his follow up visit with Dr. Miller, Plaintiff was released to work on light duty. Again, Plaintiff was later seen on the same day by PSI who adopted Dr. Miller's treatment plan to return Plaintiff to work on modified duty on February 2, 2013. PSI however still stated in its report that: "On his d/c paper we will write "Mr. CIOCIOLA is permanently unable to return to work as a Baltimore City school police officer.". After his medical visits, Plaintiff submitted his return to work clearance from his doctors to Lt. Schuch who said that Jerome Jones had directed that Plaintiff do not report for duty on modified duty status and that Plaintiff should wait until Plaintiff was cleared to report for duty on full duty status.

23. On March 1, 2013, Dr. Miller returned Plaintiff to duty with no limitations. However, after a PSI visit on March 4, 2013, PSI returned Plaintiff on modified duty. PSI noted that Plaintiff complained that Defendant would not return him to duty unless it was full duty. PSI also kept in its report that: "On his d/c paper we will write "Mr. CIOCIOLA is permanently unable to return to work as a Baltimore City school police officer." On March 8, Dr. Miller again cleared Plaintiff to return to full duty. Plaintiff's cardiologist also provided a return to work note without limitations or restrictions for Plaintiff. This was due to PSI insistence that Plaintiff perform stress tests. On March 11, 2013, PSI returned Plaintiff to full duty with

indications that Plaintiff "must qualify with weapon, pass defensive tactics and emergency driving skills."

24. On or about March 11, 2013 Plaintiff took his discharge instruction and return to full duty doctors notices to Chief Goodwin who indicated that it would have to be cleared with Jerome Jones. Subsequently, Plaintiff received a call from Cpl. Jacobs advising Plaintiff to call Jerome Jones. In the call with Jerome Jones, Plaintiff was told that because of the period of time Plaintiff was out of work with Plaintiff's work injury, Plaintiff's position was filled and there was no spot on the roster for Plaintiff.

25. On March 17, 2013, Defendant's interim CEO, Tisha Edwards, indicated to Mr. Boatwright that based on information received from Chief Goodwin and Jerome Jones including that Plaintiff's injury occurred more than nine (9) months earlier, an administrative order could not be issued returning Plaintiff to work. Sgt. Boatwright protested against the decision in reference to other SPOs who were injured and out of work for more than a year and was returned to work without any issues. By this time the FOP had registered a grievance against Plaintiff's termination.

26. On or about April 5, 2013, Chief Goodwin communicated to Sgt. Boatwright that Plaintiff "is slated to be rehired when the first available School Police Office position is available." The agency is scheduling training requirements to ensure his certification is valid with MPTC. a. June 6, and 7, 2013, he is schedule for EVOC at MPTC. b. We are seeking a Range and Defensive Tactic Training date as well. We are attempting to secure dates prior to the June dates mention above."

27. Due to illness and or hospitalization, Plaintiff was not able to do the June 6, 2013 EVOP. Plaintiff contact Cpl Jacobs and Lt Schuch and gave notice that he would not do the

EVOP test. The response indicated that the test would be rescheduled and Plaintiff will be contacted. However, Plaintiff was never contacted by anyone about rescheduling the EVOP or scheduling of any other training, assessment or skills test to return Plaintiff to duty. In November 2013 Plaintiff again contacted Lt Schuch notifying him of a second surgery for Plaintiff's work injury that was recommend by doctors for Key Risk and the City of Baltimore, which was performed in February 2014. In the November 2013 communication Plaintiff asked Lt. Schuch if Plaintiff should go to PSI and Lt. Schuch indicated that he wasn't sure, but would contact Plaintiff after he found out. Lt. Schuch never contacted Plaintiff subsequently.

28.     Plaintiff made reasonable attempts to communicate with Defendant about his employment and follow up with his grievance against his termination. However, Plaintiff was never informed that Plaintiff was rehired or that a SPO position had become available for Plaintiff. Furthermore, Plaintiff received no communication from Defendant giving Plaintiff notice, rescheduling or scheduling any training, assessments or test that Plaintiff may have been required to do before a SPO became available for Plaintiff.

29.     Upon personal knowledge information and belief, Plaintiff avers that African American SPOs including, Kareem Walker, Earl Jones, Vernon Dorsey, and Takesha Ivy, all sustained on the job injury and were placed off duty, and or on light duty status by PSI, for extended periods of time similar to Plaintiff. Defendant however returned these and other African American SPOs to modified or light duty status, without training, assessments, and tests. Furthermore, Defendant never invoked or enforce "School Board rule 405.03" against the African American SPOs who were off duty for extend period of time similar to Plaintiff. These African American SPOs were also younger than Plaintiff, in that they were less than forty (40) years old, while Plaintiff is more than sixty (60) years old.

## VII.   COUNT ONE
### (Disparate Treatment Race Discrimination in Violation of Title VII)

30. Plaintiff incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

31. The Defendant intentionally, with malice and reckless indifference to federal, state, and local laws prohibiting race discrimination in employment, directly discriminated against Plaintiff and treated the Plaintiff less favorable than Plaintiff's African American counterparts.

32. Plaintiff reasonably believes the actions of Defendant to terminate Plaintiff's employment were motivated by race discrimination and animus against Plaintiff as a Caucasian. This reasonable belief is based on Defendant's treating African American SPOs more favorably than Plaintiff as a Caucasian SPO in the manner of retaining duty status while on medical leave for an extended period of time.

33. The racially motivated discriminatory action suffered by the Plaintiff adversely affected the terms, conditions, and privileges of Plaintiff's employment, in that Plaintiff's employment was terminated.

34. Defendant had actual and/or constructive knowledge about the racially motivated discrimination and disparate treatment against Plaintiff, and not only failed to take prompt and adequate remedial action, but instead, participated in the racially motivated discriminatory conduct and disparate treatment of the Plaintiff.

35. As a direct and proximate result of the racially motivated discrimination and disparate treatment, the Plaintiff has suffered the loss of income, has suffered injury to his reputation, pain, mental anguish, and humiliation; and, faces irreparable harm and future losses.

## VIII.  COUNT TWO
### (Age Discrimination in Violation of the ADEA)

36.     Plaintiff incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

37.     Plaintiff is an employee within the meaning of the ADEA and belongs to the class of employees protected under the statute, namely, employees over the age of 40.

38.     Defendant is an employer within the meaning of the ADEA.

39.     Defendant intentionally discriminated against plaintiff because of his age in violation of the ADEA by terminating Plaintiff's employment on the pretext of enforcing School Board rule 405.03, while Defendant failed to "enforce School Board rule 405.03" against similarly situated employees under forty (40) years of age.  Furthermore, Defendant subjected Plaintiff to the requirements of performing tests, assessments and training before a SPO position was available for Plaintiff, while younger SPOs were return to work with without these requirements and or kept on duty status to avoid these requirements.

40.     On information, knowledge and belief, Plaintiff avers that the SPOs command pursued a policy or practice of forcing older SPO into retirement. The older officers are largely replaced by younger African SPOs.

## IX.  COUNT THREE
### (Retaliation)

41.     Plaintiff incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

42.     Defendant intentionally, with malice and reckless indifference to federal, state, and local laws prohibiting retaliation against employees for protected activities, retaliated against Plaintiff because Plaintiff participated in the vote of no confidence in November 2012 directed at

11

Chief Goodwin, and supported the allegations of race discrimination against Chief Goodwin that was lodged by Plaintiff's union, FOP.

43. The retaliatory conduct Plaintiff was subjected to, detailed in the foregoing paragraphs, was casually linked to Plaintiff's protected activity of participating in a vote of no confidence against Chief Goodwin, and supported and having supported the allegations of race discrimination against Chief Goodwin that was lodged by Plaintiff's union, FOP.

44. The retaliatory actions taken against Plaintiff constitute adverse employment actions and altered the terms, conditions and privileges of his employment with Defendant.

45. Defendant is fully aware of the retaliatory acts against Plaintiff detailed in the foregoing paragraphs, and was deliberately indifferent by disregarding the known or obvious conduct toward Plaintiff, and actually participated in the retaliation against Plaintiff.

46. As a direct and proximate result of the discriminatory retaliation, Plaintiff has suffered injury to his reputation, injury to his career, pain, mental anguish, and faces irreparable harm and future losses.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this court enter judgment in Plaintiff's favor and grant Plaintiff the maximum relief allowed by law, including, but not limited to;

(a) reinstatement of Plaintiff's employment

(b) loss wages;

(c) compensatory;

(d) declaration that Defendant's actions violated Title VII and the ADEA and Defendant retaliated against Plaintiff; and

(d) attorneys' fees, costs pre- and post-judgment interest, and such other relief as are just and equitable under the circumstances.

## XI. JURY DEMAND

Plaintiff requests a trial by jury on all issues.

Respectfully Submitted,

*/s/ John J. Leppler*

John J. Leppler, Esq. #19736
George A. Rose, Esq. #26086
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, MD. 21202
Telephone #: 410-727-7555
Facsimile #: 410-320-0962
Email: grose@roselawfirm.net

Attorneys for Plaintiff Francis P. Ciociola

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of October 2016, the foregoing second amended complaint was served by electronic mail through the court's CM/ECF system on: Tamal A. Banton, Senior Counsel, Office of Legal Counsel, and Marla Y. Johnson Baltimore City Public Schools, 200 East North Avenue, Suite 208, Baltimore, Maryland 21202, (tabanton@bcps.k12.md.us), (MYJohnson@bcps.k12.md.us), attorneys for Defendant.

                                            Respectfully submitted,

                                            */s/ John J. Leppler*

                                            John J. Leppler, Esquire