# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

FRANCIS P. CIOCIOLA      *

v.      *      Civil Action No. CCB-15-1451

BALTIMORE CITY BOARD OF SCHOOLS      *
COMMISSIONERS
     *
***

## Memorandum

Plaintiff, Francis P. Ciociola, has filed a complaint against defendant, Baltimore City Board of Schools Commissioners, ("BCBSC"), claiming that BCBSC discriminated against him on the basis of his race and age. Ciociola also claims that BCBSC retaliated against him after he participated in a no-confidence vote against Chief Marshall T. Goodwin.

Pending before the Court are cross-motions for summary judgment on all counts and the defendant's motion to dismiss the plaintiff's retaliation claim. (ECF Nos. 69 and 76). For the reasons stated below, BCBSC's motions will be granted and Ciociola's motion will be denied.

## Background

Francis P. Ciociola is a 62-year-old white male who, from August 24, 2004, until his retirement on January 1, 2017, was employed by the defendant, BCBSC, as a school police officer. Ciociola was never disciplined nor was his work ever noted as unsatisfactory during his 13-year tenure with the department.

Ciociola was on the job on March 23, 2012, when he injured his Achilles tendon. (Defendant's Mot. for Summary Judgment, ("Def.'s Mot.") Jones Dep., Ex. D, p. 4 ECF No. 76). He was diagnosed by Mercy Medical Hospital, which operates Mercy Medical Center's Public

1

Service Infirmary, ("PSI"), with a right ankle and Achilles tendon injury. (Plaintiff's Mot. for Summary Judgment, ("Pl.'s Mot."), Ex. 7, ECF No. 69). The visit would be the first of many. Under the terms of the Collective Bargaining Agreement ("CBA") between BCBSC and the Fraternal Order of Police Baltimore School Police Lodge No. 5, Inc., (" the union"), the union to which Ciociola belonged, a work-related injury that was not the result of negligence must be examined by BCBSC's physician. BCBSC has chosen PSI for this work. (Def.'s Mot., Jones Dep., Ex. D, p. 4).

Ciociola visited PSI often over the next few years. After each visit PSI provided Ciociola with discharge instructions that summarized his visit and ongoing medical treatment and included PSI's opinion on Ciociola's likely recovery. Ciociola was required to provide his discharge instructions to BCBSC after each visit. At his November 30, 2012, visit Ciociola told PSI that he would likely never return to work in any capacity. (Def.'s Mot., Ex. I, p. 1). This statement was turned into a prognosis. The November 30 discharge instructions read: "[i]t is highly unlikely Mr. Ciociola will return to full-duty." (*Id.* at p. 2). This line became a permanent fixture on each of Ciociola's discharge instructions until March 11, 2013, when he was cleared for full-duty, though with a condition. (Pl.'s Mot., Ex. 40). PSI noted that Ciociola "[m]ust qualify with weapons, pass defensive tactics and emergency driving skills" before returning to work. (*Id.*).

During this period, Ciociola also saw a private doctor named Stuart Miller. Dr. Miller was consistently more optimistic about Ciociola's recovery than PSI. He never expressed the same doubtfulness about Ciociola's likely return to the police force, and he always cleared Ciociola for work, in either light or full capacity, sooner than PSI did. Indeed, Dr. Miller cleared the plaintiff for full duty on March 1, 2013. (Pl.'s Mot., Ex. 35).

2

Sometime in November 2012, Sergeant Clyde E. Boatwright, President of the union, received several complaints alleging, among other things, that the Chief had created a hostile work environment for white officers. (Pl.'s Mot., Boatwright Dep., Ex. 4, pp. 42-44). That same month, Sgt. Boatwright told a meeting of the union that a man named Sergeant Askins reported that "command" did not want Sgt. Boatwright "helping the white boys." (Pl.'s Mot., Ex. 24, p. 2).

In December 2012 the union staged an anonymous no-confidence vote motivated, in part, by claims of discrimination against white officers. (Def.'s Mot., Boatwright Dep., Ex. EE, pp. 53-54). Ciociola participated, by collecting votes and submitting an anonymous vote himself, (Pl.'s Mot., Ciociola Dep., Ex. 1, pp. 25-26), but he was not a principal leader of the movement and did not help with its planning, (Pl.'s Mot., Boatwright Dep., Ex. 4, pp. 50-52). Chief Goodwin claims not to have known about Ciociola's participation in the vote. (Def.'s Mot., Goodwin Dep., Ex. FF, p. 91). Ciociola does not dispute that claim, yet he still attempts to link his participation in the union movement to the three employment actions he would soon face.

The first action came in the form of a letter on December 17, 2012. (Def.'s Mot., Ex. A). BCBSC Board Rule 405.03 empowers the department to ask an officer to accept reassignment, disability retirement, or service retirement after that officer has been repeatedly absent or out of work for a prolonged period of time because of an accident. (*Id.*). If an officer refuses to take any of those three options he may face termination. When BCBSC sent Ciociola a 405.03 letter he had been out of work for almost 10 months and PSI had just noted in its discharge instructions that Ciociola was unlikely ever to return to work. Ciociola never responded to the letter and BCBSC never enforced it. (Def.'s Mot., Jones Dep., Ex. O, pp. 242-43). Ciociola claims, however, that he has not been paid since receiving the letter. (Pl.'s Mot., p. 8).

3

The second action also occurred on December 17. It was a payroll change. (Pl.'s Mot., Ex. 31). BCBSC may only hire as many officers as there are payroll positions. This rule can cause personnel shortages if, for example, an officer goes out on disability while all of BCBSC's payroll spots are filled. (Def.'s Mot., Jones Dep., Ex. O, pp. 86-89). To avoid firing an officer out on disability but to also maintain an effective law enforcement force, the department sometimes transfers officers to different payroll locations. (*Id.*). Importantly, such transfers do not affect an employee's employment status. (*Id.*). Nor do they affect an employee's pay or benefits. (*Id.*).

The last action occurred sometime in February 2013, when Ciociola was cleared for light duty by Dr. Miller and PSI. When Ciociola brought the news to Lieutenant Schuch, who was in charge of administrative and personnel issues for BCBSC, seeking reinstatement as an officer, he was told that BCBSC did not want him to return to work until he was cleared for full-duty status. (Pl.'s Mot., Ex. 1, pp. 76-77).

PSI cleared Ciociola for full-duty service on March 11, 2013. Ciociola then spoke to Jerome Jones, labor relations manager for BCBSC, to request his job back. He was rebuffed. Jones said that he could not rehire Ciociola because his position had been filled. (Pl.'s Mot., Ex. 1, pp. 81-83). Ciociola sought help from Sergeant Boatwright. After lobbying on Ciociola's behalf, Sergeant Boatwright was told by Chief Goodwin that Ciociola "is slated to be rehired when the first available School Police Officer position is available." (Pl.'s Mot., Ex. 43., p. 1). Ciociola would just need to attend scheduled trainings to be recertified under Maryland law. (*Id.*). He never did. Suffering from illness, Ciociola cancelled his scheduled training. (Pl.'s Mot., Ciociola Dep., Ex. 1, pp. 90-91). Neither party tried to reschedule. (*Id.*).

Ciociola filed a complaint with the Equal Employment Opportunity Commission in April

4

2013. (Pl.'s Mot., Ex. 63). The complaint included some of the events described above and alleged race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and age discrimination under the Age Discrimination in Employment Act ("ADEA"). Retaliation was not mentioned. The EEOC closed its file on Ciociola's case on March 31, 2015, stating that it "is unable to conclude that the information obtained establishes violations of the statutes." (Def.'s Mot., Ex. CC).

On January 1, 2017, Ciociola retired from the Baltimore City School Police Force. (Def.'s Mot., Ex. D, p. 6). He had not been at work for nearly five years. He has sued BCBSC claiming the reason he received the 405.03 letter, the reason he was never returned to full duty, and the reason PSI maintained a doubtful outlook on his recovery was race discrimination and retaliation under Title VII and age discrimination under the ADEA.

**Standard of Review**

Under Federal Rule of Civil Procedure 56(a) summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). And "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all

5

reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

"When cross-motions for summary judgment are submitted to a district court, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

## Analysis

Ciociola and BCBSC cross-move for summary judgment. BCBSC also has moved to dismiss the plaintiff's retaliation claim. Ciociola argues that PSI's discharge instructions and BCBSC's use of the 405.03 letter and decision not to return him to full-duty amount to race discrimination and retaliation under Title VII and age discrimination under the ADEA. BCBSC argues that Ciociola was never fired from BCBSC, he never returned to full duty because he failed to complete the training required by Maryland law, the 405.03 letter and payroll move were motivated by the terms of the Board Rules rather than discrimination, and finally, Ciociola failed to exhaust his administrative remedies on his retaliation claim. For the reasons below, the retaliation claim will be dismissed and summary judgment on the other claims will be granted in favor of BCBSC.

1. Title VII Race Discrimination Claim

Title VII of the 1964 Civil Rights Act makes it unlawful to discriminate against "any individual with respect to compensation, terms, conditions, or privileges of employment" on the

basis of race. 42 U.S.C.A. § 2000e-2 (West 1991). Plaintiffs are free to prove their discrimination claim under either of two evidentiary frameworks. *Foster v. Univ. Of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Ciociola proceeds through both.

The first way to prove discrimination is through direct or indirect evidence that "race was a motivating factor in the employer's adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007). The second is a three-step burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). A plaintiff proceeding under the burden-shifting framework must first satisfy the four elements of the *prima facie* case of discrimination: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."[1] *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). After a *prima facie* case is established, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the" employer's adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Assuming the defendant completes this step, the burden shifts, for the last time, back to the plaintiff to show by a preponderance of the evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

A. Motivating Factor Framework

Ciociola first tries to make out his claim through the motivating factor framework. To succeed he must provide "direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). Race need not be the but for cause of

---

[1] The fourth prong of the *prima facie* case is context dependent. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973). As a result, courts, including the Fourth Circuit, have used different formulations of the *prima facie* case depending on the underlying claim.

7

the employer's action, but it does need to be a motivating factor. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003).

Ciociola claims PSI's doubt over his return to full duty in its discharge instructions was retaliation for his participation in the no-confidence vote against Chief Goodwin and that the statement made by Sgt. Askins about "command" is evidence of discriminatory motive.

Ciociola offers no evidence, however, that the medical staff at PSI were influenced by Chief Goodwin or anyone else at BCBSC to retaliate against him. Nor could they have been; not one of the relevant decision-makers at BCBSC knew of Ciociola's involvement in the vote. (Def.'s Mot., Jones Dep., Ex. O, p. 220; Def.'s Mot., Goodwin Dep., Ex. FF, p. 91). There is similarly no evidence that Sgt. Askins' statement is attributable to a decision-maker in this case or even whether the content of his statement is true. Accordingly, Ciociola has failed to support his discrimination claim with direct or indirect evidence.

B. Burden-Shifting Framework

Ciociola next proceeds under the burden-shifting framework which has three steps: The plaintiff first must satisfy the four elements of the *prima facie* case. If he does, the burden shifts to the defendant to provide a legitimate non-discriminatory purpose for the adverse employment action. If the defendant succeeds, the plaintiff must then show by a preponderance of the evidence that the defendant's reasons are mere pretext for discrimination. The court will assume without deciding that Ciociola can meet the *prima facie* test. Summary judgment will be granted in favor of the defendant, however, because Ciociola fails to offer proof that the defendant's nondiscriminatory reasons are pretextual.

Here, the defendant offers two legitimate non-discriminatory reasons for the adverse employment action suffered by Ciociola. First, BCBSC argues that the 405.03 letter and payroll

change were motivated by PSI's discharge instructions and other legitimate concerns; and second, the reason Ciociola was never returned to full duty was his failure to seek recertification as required under Maryland law.

Ciociola, to rebut these justifications, claims that he received unfavorable treatment compared to similarly-situated colleagues; the payroll change was not necessary because BCBSC never filled his position; PSI's insistence that he would never return to full-duty was a ruse in conflict with Dr. Miller's assessments; BCBSC's training argument fails because the defendant never reached out to reschedule the training; and BCBSC's assertion that Ciociola was never terminated is false because he has not been paid since receiving the 405.03 letter, he was never offered a desk job, the 405.03 letter was never revoked, and BCBSC never rescheduled his training.

Ciociola's arguments are not persuasive. First, his position was filled. (Def.'s Mot., Jones Dep. Ex. O, p. 89). And second, BCBSC demonstrates that the comparators Ciociola presents are not similarly situated because, among other reasons, none had received a prognosis of being unable to return to work. (Def.'s Mot., pp. 14-16 )

Further, PSI's expressed doubt over Ciociola's recovery was reasonable given that the plaintiff was the one to first doubt the likelihood of his recovery. There is also no evidence that Jones or anyone else at BCBSC influenced PSI's report. And as for the training, while BCBSC did not attempt to reschedule after Ciociola cancelled, neither did Ciociola. Accordingly, the court will grant summary judgment in favor of BCBSC.

2. ADEA Age Discrimination Claim

Ciociola also argues that BCBSC's employment actions were motivated by age discrimination. Under the Age Discrimination in Employment Act, ("ADEA"), it is unlawful for

9

an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623 (West 2016). Despite arising under a different statute, the *McDonnell Douglas* burden-shifting framework also applies to age discrimination claims. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429-30 (4th Cir. 2000).

   A. Burden-Shifting Framework

The *prima facie* case for age discrimination has four elements: The plaintiff must prove that "(1) he is a member of the protected class; (2) he was qualified for the job and met [his employer's] legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006).

Ciociola argues that the defendant's failure to provide him with a desk job when he returned to light duty in February 2013, failure to pay him throughout 2012 and 2013, and failure to rescind his 405.03 letter, "give rise to an inference of unlawful age discrimination." (Pl.'s Mot., p. 25).

Assuming without deciding that Ciociola has met the *prima facie* test for age discrimination, he fails to meet his burden of showing the defendant's legitimate non-discriminatory reasons for the adverse employment action are mere pretext for the reasons explained above. BCBSC's motion for summary judgment will be granted.

   3. Retaliation Claim

Finally, Ciociola claims that BCBSC has retaliated against him for his participation in a
10

no-confidence vote against Chief Goodwin. Ciociola has moved for summary judgment and BCBSC has moved to dismiss the claim under Fed. R. Civ. P. 12(b)(6).[2] A retaliation claim under Title VII may proceed under the, by now familiar, *McDonnell-Douglas* framework.

The *prima facie* case for retaliation has three elements: the plaintiff must prove that he (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that a causal link between the protected activity and the adverse employment action exists. *See Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 410 (4th Cir. 2013).[3] Not any causal link will suffice. The plaintiff must prove the adverse employment action was taken "*because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in the original). Therefore, "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case." *Id.* If the *prima facie* case has been met, the burden shifts next to the defendant to justify the action, then back to the plaintiff to show by a preponderance of the evidence that the defendant's legitimate reasons were pretextual.

Before a federal district court may hear a retaliation claim, however, a plaintiff must first exhaust his administrative remedies before the Equal Employment Opportunity Commission. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). A plaintiff may satisfy his exhaustion requirements under Title VII without expressly making the specific claim now before the District Court if the claim could "be expected to follow from a reasonable administrative investigation" of the facts alleged in the charge. *Id.* (internal quotations omitted). If the facts of the claim before

---

[2] The appropriate Rule 12 motion is Rule 12(b)(1) because a failure to exhaust administrative remedies strips the court of subject matter jurisdiction. *See Jones v. Calvert*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.").
[3] "Like claims of age discrimination," this court also applies the "*McDonnell Douglas* framework to retaliation claims." *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).

11

the district court reference the same "time frames, actors, and discriminatory conduct" as the "central factual allegation[]," *id.*, or if they are otherwise "reasonably related to the factual allegations" in the "administrative charge," *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000), then they might follow from a reasonable administrative investigation.

Ciociola's retaliation claim stands on his participation in an anonymous no-confidence vote against Chief Goodwin. But Ciociola never checked the retaliation box on his EEOC charge form and neither did he mention his retaliation claim in his narrative. He merely described the events that occurred while he was out on disability, and then claimed that similarly situated African-American and younger colleagues were not similarly treated. There is not a single fact alleged—Ciociola fails to mention even his participation in the no-confidence vote—that would hint at the existence of retaliation. A reasonable investigation of these facts would not include retaliation, and, therefore, the plaintiff's retaliation claim must be dismissed for failure to exhaust his administrative remedies.

Even if the court were to reach the merits of Ciociola's retaliation claim, however, he would not prevail. Assuming without deciding that he could meet the *prima facie* test, the defendant offers a legitimate reason for the adverse employment action taken, and Ciociola fails to show the reason is only pretext.

**Conclusion**

The court will grant BCBSC's motions and deny Ciociola's motion for summary judgment. A separate Order follows.

\_\_\_\_\_ 9/27/2017\_\_\_\_\_ _____/s/_____
Date  Catherine C. Blake
United States District Judge